**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X  Case No.: 20-cv-05126

MAGALIS OTERO,

                                        Plaintiff,


                                                          **COMPLAINT**

                    -against-



VERIZON NEW YORK INC.,
CETERIS PORTFOLIO SERVICES, LLC d/b/a NORTH
SHORE AGENCY,
COLLECTO, INC. d/b/a EOS CCA and
RECEIVABLES PERFORMANCE MANAGEMENT, LLC,

                                        Defendants.
------------------------------------------------------------------------X

              Plaintiff, by and through her attorneys, FAGENSON & PUGLISI, PLLC, upon

knowledge as to herself and her own acts, and as to all other matters upon information and belief,

brings this complaint against above-named defendants and in support thereof alleges the

following:

                                INTRODUCTION

        1.      This is an action for damages brought by an individual  consumer

for defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§ 1692, *et seq.* which prohibits debt collectors from engaging in abusive, deceptive and unfair acts

and practices.

              2.      Further, this is an action for damages and injunctive relief brought by an

individual  consumer  against  defendants  pursuant  to  New  York  General  Business  Law

("NYGBL") § 349 and the tort of negligence regarding defendants' deceptive acts and practices.

JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 and supplemental jurisdiction exists over the NYGBL § 349 claims pursuant to 28 U.S.C. § 1367.

4.      This Court has venue pursuant to 28 U.S.C. § 1391(b) in that plaintiff resides in this District and a substantial portion of the events or omissions giving rise to this action occurred in this District.

PARTIES

5.      Plaintiff is a natural person who resides in this District.

6.      Plaintiff is a consumer within the meaning of 15 U.S.C. § 1692a(3) as she is a natural person who is alleged by defendants to owe a financial obligation.

7.      The financial obligation which defendants sought to collect from plaintiff is a debt within the meaning of 15 U.S.C. § 1692a(5) in that the obligation which defendants sought to collect from plaintiff is an allegedly defaulted debt incurred for personal, family or household purposes to defendant Verizon New York Inc. ("Verizon").

8.      Plaintiff is a reasonable consumer within the meaning of NYGBL § 349 who acted reasonably under the circumstances alleged herein.

9.      Upon information and belief, at all times material herein Verizon was and is a domestic business corporation.

10.     Upon information and belief, at all times material herein Verizon had and has a principal place of business at 140 West Street, New York, New York 10007.

11.     Upon information and belief, at all times material herein Verizon was and is authorized to do business and doing business in the State of New York.

12.     Defendant Ceteris Portfolio Services, LLC d/b/a North Shore Agency ("North Shore") is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

13.     The principal purpose of North Shore's business is the collection of defaulted consumer debts.

14.     North Shore uses the mails in its business the principal purpose of which is the collection of defaulted consumer debts.

15.     North Shore regularly collects or attempts to collect defaulted consumer debts owed or due or alleged to be owed or due to others.

16.     Upon information and belief, North Shore is a foreign limited liability company formed under the laws of the State of Delaware.

17.     Defendant Collecto, Inc. d/b/a EOS CCA ("Collecto") is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

18.     The principal purpose of Collecto's business is the collection of defaulted consumer debts.

19.     Collecto uses the mails in its business the principal purpose of which is the collection of defaulted consumer debts.

20.     Collecto regularly collects or attempts to collect defaulted consumer debts owed or due or alleged to be owed or due to others.

21.     Upon information and belief, Collecto is a foreign business corporation incorporated under the laws of the State of Massachusetts.

22.     Defendant Receivables Performance Management, LLC ("RPM") is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

23.     The principal purpose of RPM's business is the collection of defaulted consumer debts.

24.     RPM uses the mails in its business the principal purpose of which is the collection of defaulted consumer debts.

25.     RPM regularly collects or attempts to collect defaulted consumer debts owed or due or alleged to be owed or due to others.

26.     Upon information and belief, RPM is a foreign limited liability company formed under the laws of the State of Washington.

## FACTUAL ALLEGATIONS

27.     Plaintiff re-alleges paragraphs 1-26 as if fully re-stated herein.

28.     At some point in time plaintiff allegedly incurred aforesaid personal debt to Verizon.

29.     At some subsequent point in time Verizon alleged that the debt fell into default.

30.     Subsequent to the alleged default, in or around June 2016 plaintiff received a collection letter from North Shore.

31.     Said letter is dated June 3, 2016.

32.     North Shore sent a collection letter to plaintiff dated June 3, 2016.

33.     By said letter, North Shore was attempting to collect the debt on behalf of Verizon.

34. Verizon referred the debt to North Shore to collect from plaintiff.

35. Verizon hired North Shore to collect the debt from plaintiff.

36. In the matter of the collection of the debt from plaintiff, North Shore was Verizon's agent.

37. In the matter of the collection of the debt from plaintiff, Verizon was North Shore's client.

38. In the matter of the collection of the debt from plaintiff, Verizon was North Shore's principal.

39. Verizon did control and/or had the ability to exercise control over North Shore in North Shore's collection of the debt.

40. After receipt of aforesaid collection letter from North Shore, plaintiff consulted with her attorneys at Fagenson & Puglisi concerning the alleged debt and the collection letter.

41. On behalf of plaintiff, by letter dated June 23, 2016, Fagenson & Puglisi wrote to North Shore.

42. In said letter to North Shore, Fagenson & Puglisi informed North Shore that plaintiff was represented by Fagenson & Puglisi, that plaintiff should not be contacted directly and that plaintiff disputed the debt.

43. In said letter to North Shore, Fagenson & Puglisi also requested documentation supporting the claim.

44. North Shore received Fagenson & Puglisi's aforesaid representation letter.

45.    By letter dated July 7, 2016, North Shore wrote to Fagenson & Puglisi.

46.    In said letter, North Shore acknowledged having been contacted by Fagenson & Puglisi.

47.    Further, in said letter North Shore stated that in light of the information provided it had arranged to cease its collection efforts.

48.    In said letter, North Shore also stated that it will forward a copy of Fagenson & Puglisi's correspondence to Verizon.

49.    A copy of North Shore's said July 7, 2016 letter to Fagenson & Puglisi is attached hereto as Exhibit 1.

50.    Further, in or around July 2016 plaintiff received a collection letter from Collecto.

51.    Said letter is dated July 6, 2016.

52.    Collecto sent a collection letter to plaintiff dated July 6, 2016.

53.    Said letter from Collecto was an attempt to collect the aforesaid Verizon debt.

54.    By said letter, Collecto was attempting to collect the debt on behalf of Verizon.

55.    Verizon referred the debt to Collecto to collect from plaintiff.

56.    Verizon hired Collecto to collect the debt from plaintiff.

57.    In the matter of the collection of the debt from plaintiff, Collecto was Verizon's agent.

58.     In the matter of the collection of the debt from plaintiff, Verizon was Collecto's client.

59.     In the matter of the collection of the debt from plaintiff, Verizon was Collecto's principal.

60.     Verizon did control and/or had the ability to exercise control over Collecto in Collecto's collection of the debt.

61.     Collecto sent its aforesaid collection letter directly to plaintiff at her home.

62.     After receipt of aforesaid collection letter from Collecto, plaintiff again consulted with her attorneys at Fagenson & Puglisi concerning the alleged debt and the collection letter from Collecto.

63.     On behalf of plaintiff, by letter dated July 19, 2016, Fagenson & Puglisi wrote to Collecto.

64.     In said letter to Collecto, Fagenson & Puglisi informed Collecto that plaintiff was represented by Fagenson & Puglisi, that plaintiff should not be contacted directly and that plaintiff disputed the debt.

65.     In said letter to Collecto, Fagenson & Puglisi also requested documentation supporting the claim.

66.     Collecto received Fagenson & Puglisi's aforesaid representation letter.

67.     By letter dated August 5, 2016, Collecto again wrote directly to Plaintiff at her home.

68.     In said letter, Collecto informed plaintiff that it had closed plaintiff's account and returned it to Verizon and further, that it would not contact plaintiff any further.

69.     A copy of Collecto's said August 5, 2016 letter to plaintiff is attached hereto as Exhibit 2.

70.     Thereafter, on May 19, 2020 plaintiff received a collection telephone call from RPM on her mobile telephone at approximately 3:40 p.m.

71.     RPM telephoned plaintiff on May 19, 2020.

72.     RPM telephoned plaintiff on May 19, 2020 in an attempt to collect the aforesaid Verizon debt.

73.     In calling plaintiff on May 19, 2020, RPM was attempting to collect the aforesaid Verizon debt on behalf of Verizon.

74.     Verizon referred the debt to RPM to collect from plaintiff.

75.      Verizon hired RPM to collect the debt from plaintiff.

76.      In the matter of the collection of the debt from plaintiff, RPM was Verizon's agent.

77.     In the matter of the collection of the debt from plaintiff, Verizon was RPM's principal.

78.     Verizon did control and/or had the ability to exercise control over RPM in RPM's collection of the debt.

79.     Plaintiff answered the telephone and spoke with a representative of RPM.

80.     Plaintiff did not know why RPM was calling her about a Verizon debt.

81.     During said telephone call, plaintiff asked the representative to send verification of whichever debt RPM was seeking to collect.

82.     The representative agreed to send verification of the debt.

83.     On May 19, 2020, RPM had not yet sent any written communication to plaintiff concerning the debt.

84.     On May 19, 2020, RPM had not yet sent any written communication to plaintiff's attorneys concerning the debt.

85.     On information and belief, RPM placed telephone calls concerning the Verizon debt to plaintiff other than the one it placed on May 19, 2020 at approximately 3:40 p.m.

86.     Thereafter, on or about June 10, 2020 plaintiff received a collection letter from RPM.

87.     Said letter is dated May 28, 2020.

88.     RPM sent a collection letter to plaintiff dated May 28, 2020.

89.     RPM sent the collection letter directly to plaintiff at her home.

90.     Said letter from RPM was mailed to plaintiff no earlier than June 1, 2020.

91.     When plaintiff received the letter, plaintiff discovered that said letter from RPM was yet another attempt to collect the same Verizon debt.

92.     Said letter was RPM's first written communication with plaintiff.

93.     Said letter was not sent to plaintiff within five days following RPM's telephone conversation with plaintiff on May 19, 2020.

94.     A copy of RPM's said letter to plaintiff dated May 28, 2020 is attached hereto as Exhibit 3.

95.     North Shore received Fagenson & Puglisi's aforesaid representation letter dated June 23, 2016.

96.     North Shore knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

97.     North Shore knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

98.     North Shore informed Fagenson & Puglisi that North Shore would forward a copy of Fagenson & Puglisi's representation letter to Verizon.

99.     North Shore ought to have informed Verizon that plaintiff was represented by Fagenson & Puglisi before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

100.     North Shore informed Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

101.     North Shore informed Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

102.     Verizon knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

103.     Verizon knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

104.     Further, Collecto received Fagenson & Puglisi's aforesaid representation letter dated July 19, 2016.

105.     Collecto knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

106.     Collecto knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

107.     Collecto ought to have informed Verizon that plaintiff was represented by Fagenson & Puglisi before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

108.     Collecto informed Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

109.     Collecto informed Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

110.     Verizon knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

111.    Verizon knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

112.    Verizon in turn informed RPM that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

113.    Verizon informed RPM that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

114.    RPM knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

115.    RPM knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

116.    RPM should have known that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

117.    In any event, RPM had an affirmative duty to inquire of Verizon whether plaintiff was represented by counsel before RPM communicated directly with plaintiff.

118.    RPM did not inquire of Verizon whether plaintiff was represented by counsel before RPM communicated directly with plaintiff.

119.    RPM placed its telephone calls to plaintiff and sent its collection letter directly to plaintiff at her home as aforesaid notwithstanding its knowledge that plaintiff was represented by an attorney in the matter of the debt.

120.    RPM communicated directly with plaintiff in the placing of its telephone calls to plaintiff and the sending of its collection letter directly to plaintiff at her home as aforesaid, notwithstanding its prior knowledge that plaintiff was represented by counsel in the matter of the debt.

121.    In the alternative, North Shore failed to inform Verizon of plaintiff's legal representation before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

122.    North Shore's said failure to inform Verizon of plaintiff's legal representation occurred within the one-year period immediately preceding the commencement of this action.

123.     Further in the alternative, Collecto failed to inform Verizon of plaintiff's legal representation before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

124.    Collecto's said failure to inform Verizon of plaintiff's legal representation occurred within the one-year period immediately preceding the commencement of this action.

125.    As a further alternative theory of liability, North Shore did inform Verizon of plaintiff's legal representation before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

126.    As a further alternative theory of liability, Collecto did inform Verizon of plaintiff's legal representation before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

127.    However, Verizon failed to inform RPM of plaintiff's legal representation before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

128.    Communications from debt collectors, such as those sent by defendants, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer".

129.    Upon receipt of RPM's telephone calls and RPM's untimely collection letter, plaintiff felt surprised, confused, annoyed, upset and irritated, and a sense that defendants had set upon her and were harassing her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt.

## ALLEGATIONS AGAINST RPM

### AS AND FOR A FIRST CAUSE OF ACTION

#### Improper direct communication with Plaintiff

15 U.S.C. §§ 1692c(a)(2) and 1692e

130.    Plaintiff re-alleges paragraphs 1-129 as if fully re-stated herein.

131.    North Shore informed Verizon that plaintiff was represented by Fagenson & Puglisi and should not be contacted directly before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

132. Collecto informed Verizon that plaintiff was represented by Fagenson & Puglisi and should not be contacted directly before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

133. Verizon knew that plaintiff was represented by Fagenson & Puglisi and should not be contacted directly before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

134. Verizon informed RPM that plaintiff was represented by Fagenson & Puglisi before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

135. Verizon informed RPM that plaintiff was represented by legal counsel before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

136. RPM knew of plaintiff's legal representation before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

137. RPM knew that plaintiff was represented by Fagenson & Puglisi in the matter of the debt before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

138. In any event, RPM had an affirmative duty to inquire of Verizon whether plaintiff was represented by counsel in the matter of the debt before RPM communicated directly with plaintiff.

139.    RPM did not inquire of Verizon whether plaintiff was represented by counsel before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

140.    RPM placed its telephone calls to plaintiff and RPM sent its collection letter directly to plaintiff at her home notwithstanding its knowledge that plaintiff was represented by legal counsel, thereby violating the FDCPA, § 1692c(a)(2).

141.    RPM placed its telephone calls to plaintiff and RPM sent its collection letter directly to plaintiff at her home as a result of its violation of its affirmative duty to inquire of Verizon, before communicating with plaintiff, whether plaintiff was represented by legal counsel, thereby violating the FDCPA, § 1692c(a)(2).

142.    Further, RPM is in violation of the FDCPA, § 1692e in that RPM's conduct in contacting plaintiff directly after knowledge of attorney representation, constitutes a deceptive and misleading means used in an attempt to collect the debt and was an effort to mislead plaintiff into communicating with RPM directly in disregard of the representation of her legal counsel.

143.    RPM is further in violation of the FDCPA, § 1692e in that RPM's conduct in contacting plaintiff directly was a result of its violation of its affirmative duty to inquire of Verizon, before communicating with plaintiff, whether plaintiff was represented by counsel, and constitutes a deceptive and misleading means used in an attempt to collect the debt as an effort to mislead plaintiff into communicating with RPM directly in disregard of the representation of her legal counsel.

## AS AND FOR A SECOND CAUSE OF ACTION

### Failure timely to send validation notice

### 15 U.S.C. §§ 1692g(a) and 1692e

144.   Plaintiff re-alleges paragraphs 1-143 as if fully re-stated herein.

145.   15 U.S.C. § 1692g(a) provides:

**(a) Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–

**(1)** the amount of the debt;

**(2)** the name of the creditor to whom the debt is owed;

**(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

146.   Said written notice is commonly referred to as a "validation notice".

147.   Plaintiff held a conversation with RPM on one occasion, *viz.*, May 19, 2020 at 3:40 p.m.

148.   RPM placed telephone calls to plaintiff before May 19, 2020.

149.   RPM did not provide the validation notice to plaintiff during any of its collection calls to plaintiff.

150.    Pursuant to 15 U.S.C. § 1692g(a), RPM had a duty to send the validation notice to plaintiff within five (5) days after the initial communication which was, at the latest, May 19, 2020.

151.    RPM did not send the validation notice to plaintiff within five (5) days after May 19, 2020.

152.    RPM's letter dated May 28, 2020 containing the validation notice, Exhibit 3, was sent to plaintiff, at earliest, on June 1, 2020.

153.    RPM placed at least one telephone call to plaintiff on her mobile telephone after May 24, 2020 and before it sent the validation notice to plaintiff, further harassing and abusing plaintiff thereby.

154.    RPM sent the validation notice to plaintiff in an untimely manner, in violation of the FDCPA, 15 U.S.C. § 1692g(a).

155.    In addition, RPM's untimely sending of the validation notice constitutes a deceptive and misleading means used in an attempt to collect the debt, in violation of 15 U.S.C. § 1692e.

## AS AND FOR A THIRD CAUSE OF ACTION

### NYGBL § 349

156.    Plaintiff re-alleges paragraphs 1-155 as if fully re-stated herein.

157.    RPM owed a duty to plaintiff to effect its collection of plaintiff's alleged debt with reasonable care.

158.    RPM breached its duty to collect plaintiff's debt with reasonable care.

159.    In the exercise of reasonable care RPM ought to have ensured that for any account on which an attorney represented the consumer any communication by RPM was made with the attorney, and not with the consumer directly.

160.    The fact that RPM contacted plaintiff directly regarding the same debt for which RPM had been informed that she had attorney representation indicates a failure on the part of RPM to comply with or to perform its duty to effect collection of the debt with reasonable care.

161.    On information and belief, at all times material herein, Verizon placed dozens of consumer accounts of New York residents with RPM for collection monthly.

162.    RPM's act of communicating with plaintiff directly despite her legal representation is a deceptive act and practice.

163.    Said deceptive act and practice was committed by RPM in the conduct of a business, trade or commerce or the furnishing of a service in the State of New York and constitutes a violation of NYGBL § 349.

164.    RPM's letter to plaintiff is a form collection letter.

165.    RPM's letter to plaintiff is derived from a letter template.

166.    RPM's collection telephone calls to plaintiff were made in the ordinary and regular course of RPM's collection business.

167.    RPM's deceptive act and practice was therefore consumer-oriented, in that RPM's act of communicating directly with a legally–represented consumer despite knowledge that she is represented by counsel was not an act limited to plaintiff's account, but extended to the accounts of other consumers which Verizon referred to RPM for collection and on which there was legal representation.

168.    RPM maintained no agreement or procedure with Verizon to ensure that Verizon did not refer to RPM accounts of legally–represented consumers for collection or, in the alternative, to ensure that RPM did not communicate directly with legally–represented consumers.

169.    RPM's said conduct of communicating directly with legally–represented consumers has a broader impact on consumers at large whose accounts are referred by Verizon to RPM for collection and who are represented by counsel in the matter of the collection of their Verizon debts.

170.    RPM owes a duty to plaintiff and consumers at large to honor their right to legal representation and RPM's failure to honor plaintiff's said right resulted in RPM placing its said telephone calls to plaintiff and sending its collection letter directly to plaintiff directly at her home, thereby improperly encouraging plaintiff to contact RPM directly about a debt for which she had the representation of legal counsel.

171.    Therefore, RPM's failure to honor plaintiff's legal representation by its placing of its said telephone calls to plaintiff and sending of its collection letter directly to plaintiff at her home was deceptive and misleading in a material way.

172.    Plaintiff is a reasonable consumer within the meaning of the NYGBL § 349(a) and acted reasonably under the circumstances of this case.

173.    Upon receipt of RPM's telephone calls and RPM's untimely collection letter, plaintiff felt surprised, confused, annoyed, upset and irritated, and a sense that defendants had set upon her and were harassing her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt.

174.    RPM violated NYGBL § 349(a) by the placing of its said telephone calls to plaintiff and the sending of its untimely collection letter directly to plaintiff at her home and is liable to plaintiff under NYGBL § 349(h).

175.    As a result of the above violations, plaintiff is entitled to an injunction against RPM and RPM is liable to plaintiff for damages in an amount to be determined at the time of trial, plus costs and attorneys' fees.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Negligence *per se*

176.    Plaintiff re-alleges paragraphs 1-175 as if fully re-stated herein.

177.    Under the NYGBL § 349(a), RPM owed a recognized duty to plaintiff to effect collect of her alleged debt with reasonable care.

178.    Under the NYGBL § 349(a), RPM had a recognized duty not to use deceptive acts and practices in the conduct of its business in the State of New York.

179.    RPM breached each duty to plaintiff.

180.     RPM breached each duty to plaintiff by disregarding her right to be represented by counsel, by placing its said telephone calls to plaintiff and by sending its untimely collection letter directly to plaintiff at her home in defendants' campaign to collect the debt from plaintiff.

181.     RPM repeatedly communicated with plaintiff directly in breach of its duty to effect collection of the debt with reasonable care and not to use deceptive acts and practices in the conduct of its business.

182.     RPM should not have communicated directly with plaintiff, whether verbally or in writing.

183.     In its improper communication directly with plaintiff, RPM sent the validation notice to plaintiff in a untimely manner in breach of its duty to effect collection of the debt with reasonable care.

184.     As a direct consequence of RPM's said breach of duty to plaintiff, plaintiff suffered damage.

185.     As a direct consequence of RPM's said breach of duty to plaintiff, plaintiff suffered damage in that upon receipt of RPM's telephone calls and RPM's untimely collection letter plaintiff felt surprised, confused, annoyed, upset and irritated, and a sense that defendants had set upon her and were harassing her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt, and RPM's contacts with her directly caused plaintiff to fear that Fagenson & Puglisi no longer represented her in the matter of the debt and caused plaintiff to seek further legal advice and representation.

WHEREFORE, plaintiff respectfully prays that judgment be entered against RPM as follows:

(a)     awarding maximum statutory damages pursuant to 15 U.S.C. § 1692k;

(b)     awarding actual damages pursuant to 15 U.S.C. § 1692k in an amount to be determined at time of trial;

(c)     awarding reasonable attorneys' fees, costs and disbursements pursuant to 15 U.S.C. § 1692k;

(d)     enjoining RPM from continuing to communicate with plaintiff directly, pursuant to NYGBL § 349;

(e)     enjoining RPM from committing further deceptive acts and practices towards plaintiff, pursuant to NYGBL § 349;

(f)     awarding actual damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(g)     in the alternative to (f), awarding statutory damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(h)     awarding damages to plaintiff in the tort of negligence;

(i)     awarding reasonable attorneys' fees, costs and disbursements pursuant to NYGBL § 349(h); and

(j)     for such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff requests trial by jury on all issues so triable.

## ALLEGATIONS AGAINST VERIZON

AS AND FOR A FIFTH CAUSE OF ACTION

NYGBL § 349

186.   Plaintiff re-alleges paragraphs 1-185 as if fully re-stated herein.

187.   Under NYGBL, Verizon owed a duty to plaintiff to effect its collection of plaintiff's alleged debt with reasonable care.

188.   As an alternative cause of action, Verizon breached its duty to collect plaintiff's debt with reasonable care.

189.   Verizon received Fagenson & Puglisi's representation letter dated June 23, 2016.

190.   Verizon knew that plaintiff was represented by Fagenson & Puglisi before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

191.   North Shore informed Verizon that plaintiff was represented by Fagenson & Puglisi before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

192.   Collecto informed Verizon that plaintiff was represented by Fagenson & Puglisi before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

193.   Nevertheless, Verizon did not inform RPM that plaintiff was represented by Fagenson & Puglisi.

194.     Verizon did not inform RPM that plaintiff was represented by Fagenson & Puglisi before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

195.     Verizon thereby caused RPM to place its telephone calls to plaintiff and to send its collection letter directly to plaintiff at her home.

196.     In the exercise of reasonable care, Verizon ought to have ensured that for any debt on which an attorney represented the consumer any communication by Verizon or by any of its agents was made with the attorney and not with the consumer directly.

197.     The fact that Verizon's agent, RPM, contacted plaintiff directly regarding the same debt for which Verizon had repeatedly been informed that plaintiff had legal representation indicates a failure on the part of Verizon to comply with or to perform its duty to effect collection of the debt with reasonable care.

198.     On information and belief, at all times material herein, Verizon assigned to RPM dozens of consumer accounts of New York residents each month for the purpose of collection.

199.     Verizon's act of failing to inform RPM that plaintiff was represented by Fagenson & Puglisi is a deceptive act and practice.

200.     Said deceptive act and practice was committed by Verizon in the conduct of a business, trade or commerce or the furnishing of a service in the State of New York and constitutes a violation of NYGBL § 349.

201.     Verizon's deceptive act and practice was consumer–oriented, in that Verizon's act of failing to inform RPM that plaintiff was represented by Fagenson & Puglisi despite knowledge that she was so represented was not an act limited to plaintiff's account, but extended to the accounts of other consumers which RPM obtained from Verizon for collection and on which there was legal representation.

202.     Further, Verizon's deceptive act and practice was consumer–oriented, in that Verizon has repeatedly been sued for its failure to inform its debt collectors that consumers who Verizon knows to be represented by counsel are in fact represented by counsel.

203.     The undersigned counsel alone has represented several consumers who have sued Verizon for its failure to inform its debt collectors that said consumers were represented by counsel in the matter of the collection of their debts.

204.     Verizon maintained no procedure to ensure that it did not communicate, through its agent RPM, with consumers it knew to be represented by counsel.

205.     Verizon's said conduct of failing to inform its agents that consumers are represented by legal counsel despite so knowing has a broader impact on consumers at large whose accounts are assigned to RPM for collection and who are represented by counsel in the matter of the collection of their Verizon debts.

206.     Verizon owes a duty to plaintiff and consumers at large to honor their right to legal representation and Verizon's failure to honor plaintiff's said right resulted in RPM, Verizon's agent, placing its telephone calls to plaintiff and sending its collection letter directly to plaintiff at her home, thereby improperly encouraging plaintiff to communicate with RPM directly about a debt for which Verizon knew she had the representation of legal counsel.

207.    Therefore, Verizon's failure to honor plaintiff's legal representation and its agent RPM's placing of its telephone calls to plaintiff and sending of its collection letter directly to plaintiff at her home, were deceptive and misleading in a material way.

208.    Verizon is directly liable for its own conduct in failing to inform RPM that plaintiff was represented by Fagenson & Puglisi before RPM communicated directly with plaintiff as aforesaid.

209.    Even if Verizon had informed RPM of plaintiff's legal representation in a timely manner, Verizon is nevertheless vicariously liable to plaintiff for the improper conduct of its agent RPM in nevertheless repeatedly communicating directly with plaintiff.

210.    Plaintiff is a reasonable consumer within the meaning of the NYGBL and acted reasonably under the circumstances of this case.

211.    Upon receipt of RPM's telephone calls and RPM's untimely collection letter, plaintiff felt surprised, confused, annoyed, upset and irritated, and a sense that defendants had set upon her and were harassing her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt.

212.    As a result of the above violations, plaintiff is entitled to injunctive relief against Verizon and, owing to Verizon's willful, flagrant and persistent disregard for consumers' right to legal representation Verizon is liable to plaintiff for exemplary damages, treble damages, actual damages and/or statutory damages in an amount to be determined at the time of trial, plus costs and attorneys' fees.

AS AND FOR A SIXTH CAUSE OF ACTION

Negligence *per se*

213.    Plaintiff re-alleges paragraphs 1 to 212 as if fully re-stated herein.

214.    Under the NYGBL § 349(a), Verizon owed a recognized duty to plaintiff to effect collection of her alleged debt with reasonable care.

215.    Under the NYGBL § 349(a), Verizon had a recognized duty not to use deceptive acts and practices in the conduct of its business in the State of New York.

216.    Verizon breached each duty to plaintiff.

217.    Verizon breached each duty to plaintiff by failing to inform RPM of plaintiff's legal representation, thereby disregarding plaintiff's right to legal representation and causing RPM to place its telephone calls to plaintiff and to send its collection letter directly to plaintiff at her home, all in Verizon's campaign to collect the debt from plaintiff.

218.    North Shore informed Verizon that plaintiff was represented by Fagenson & Puglisi before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

219.    Collecto informed Verizon that plaintiff was represented by Fagenson & Puglisi before RPM placed its telephone calls to plaintiff and before RPM sent its collection letter directly to plaintiff at her home.

220.    Nevertheless, Verizon did not inform RPM that plaintiff was represented by Fagenson & Puglisi.

221.    Verizon communicated with plaintiff directly, by its agent RPM, in breach of its duty to effect collection of the debt with reasonable care.

222.    As a direct result of Verizon's said breach of duty to plaintiff, plaintiff suffered damage.

223.    As a direct result of Verizon's said breach of duty to plaintiff, plaintiff suffered damage in that upon receipt of RPM's telephone calls and RPM's untimely collection letter plaintiff felt surprised, confused, annoyed, upset and irritated, and a sense that defendants had set upon her and were harassing her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt, and RPM's contacts with her directly caused plaintiff to fear that Fagenson & Puglisi no longer represented her in the matter of the debt and caused plaintiff to seek further legal advice and representation.

224.    Verizon is directly liable for its own conduct in failing to inform RPM that plaintiff was represented by Fagenson & Puglisi before RPM placed its telephone calls to plaintiff and sent its collection letter directly to plaintiff at her home.

225.    Even if Verizon had informed RPM of plaintiff's legal representation in a timely manner, Verizon is nevertheless vicariously liable to plaintiff for the improper conduct of its agent RPM in nevertheless repeatedly communicating directly with plaintiff.

WHEREFORE, plaintiff respectfully prays that judgment be entered against Verizon as follows:

(a)    enjoining Verizon from continuing to communicate with plaintiff directly through its agents, pursuant to NYGBL § 349;

(b)    enjoining Verizon from committing further deceptive and misleading acts and practices against plaintiff, pursuant to NYGBL § 349;

(c)     awarding exemplary damages pursuant to NYGBL § 349 in an amount to

be determined at time of trial;

(d)     awarding treble damages pursuant to NYGBL § 349 in an amount to

be determined at time of trial;

(e)     awarding actual damages pursuant to NYGBL § 349 in an amount to

be determined at time of trial;

(f)     in the alternative to (e), awarding statutory damages pursuant to

NYGBL § 349 in an amount to be determined at time of trial;

(g)     awarding reasonable attorneys' fees, costs and disbursements

pursuant to NYGBL § 349(h);

(h)     awarding damages to plaintiff in the tort of negligence; and

(i)     for such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff requests trial by jury on all issues so triable.

## **ALLEGATIONS AGAINST NORTH SHORE**

### AS AND FOR A SEVENTH CAUSE OF ACTION

### Improper failure to inform Verizon of Plaintiff's legal representation

### 15 U.S.C. §§ 1692e and 1692e(2)(A)

226.    Plaintiff re-alleges paragraphs 1-225 as if fully re-stated herein.

227.    By its letter dated June 23, 2016, Fagenson & Puglisi informed

North Shore that plaintiff was represented by counsel.

228.    North Shore received Fagenson & Puglisi's aforesaid representation

letter.

229.    North Shore knew that plaintiff was represented by Fagenson & Puglisi in the matter of the debt before RPM placed its telephone calls to plaintiff in May 2020 and before RPM sent its collection letter directly to plaintiff at her home in June 2020.

230.    Pursuant to 15 U.S.C. § 1692e(2)(A), North Shore had a duty to inform Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the debt.

231.    North Shore even informed Fagenson & Puglisi that North Shore would send a copy of Fagenson & Puglisi's representation letter to Verizon.

232.    As and for an alternative cause of action, North Shore did not inform Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the debt.

233.    North Shore did not inform Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the debt before RPM placed its telephone calls to plaintiff in May 2020 and before RPM sent its collection letter directly to plaintiff at her home in June 2020.

234.    North Shore is therefore in violation of 15 U.S.C. § 1692e(2)(A), for its failure to inform Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the debt, thereby falsely representing the nature and character of the debt.

235.    North Shore is also in violation of 15 U.S.C. § 1692e in that its failure to inform Verizon that plaintiff was represented by Fagenson & Puglisi constitutes a false, deceptive and misleading means used by North Shore in connection with the collection of the debt, because such failure caused Verizon to authorize RPM to place its telephone calls to plaintiff and to send its collection letter directly to plaintiff at her home. thereby violating plaintiff's right to be represented by legal counsel.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

## NYGBL § 349

236.     Plaintiff re-alleges paragraphs 1-235 as if fully re-stated herein.

237.     North Shore owed a duty to plaintiff to effect its collection of plaintiff's alleged debt with reasonable care.

238.     As and for an alternative cause of action, North Shore breached its duty to collect plaintiff's debt with  reasonable care.

239.     In the exercise of reasonable care, North Shore ought to have ensured that North Shore informed Verizon of any account for which North Shore received notice that an attorney represented the consumer.

240.     Fagenson & Puglisi's representation letter dated June 23, 2016 to North Shore notified North Shore of Fagenson & Puglisi's legal representation of plaintiff.

241.     North Shore received Fagenson & Puglisi's letter as evidenced by North Shore's response letter to Fagenson & Puglisi at Exhibit 1.

242.     North Shore informed Fagenson & Puglisi that North Shore would send a copy of Fagenson & Puglisi's representation letter to Verizon.

243.     However, North Shore did not inform Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the debt before RPM placed its telephone calls to plaintiff in May 2020 and before RPM sent its collection letter directly to plaintiff at her home in June 2020.

244.     The fact that RPM contacted plaintiff directly regarding the same debt for which North Shore had previously been notified that plaintiff had legal representation indicates a failure on the part of North Shore to comply with or to perform its duty to effect collection of the debt with reasonable care.

245.     Had North Shore duly informed Verizon of plaintiff's legal representation then Verizon should have so informed RPM and RPM would not have placed its telephone calls and sent its collection letter directly to plaintiff at her home.

246.     On information and belief, at all times material herein, Verizon referred dozens of consumer accounts of New York residents to North Shore for collection each month.

247.     North Shore's act of failing to inform Verizon that plaintiff was represented by Fagenson & Puglisi is a deceptive act and practice and caused RPM unlawfully to communicate directly with plaintiff.

248.     Said deceptive act and practice was committed by North Shore in the conduct of a business, trade or commerce or the furnishing of a service in the State of New York and constitutes a violation of NYGBL § 349.

249.     North Shore's deceptive act and practice was consumer–oriented, in that North Shore's act of failing to inform Verizon that plaintiff was represented by Fagenson & Puglisi, despite North Shore's knowledge of same, was not an act limited to plaintiff's account, but extended to the accounts of other consumers which Verizon placed with North Shore for collection and on which North Shore had been notified there was legal representation.

250.   At all times material herein, North Shore maintained no agreement or procedure with Verizon to ensure that North Shore duly informed Verizon of all Verizon accounts for which North Shore was notified that an attorney represented the consumers.

251.   North Shore's said conduct of failing to inform Verizon that consumers are represented by counsel has a broader impact on consumers at large whose accounts are referred by Verizon to North Shore for collection and who are represented by counsel in the matter of the collection of their Verizon debts.

252.   North Shore owes a duty to plaintiff and consumers at large to honor their right to legal representation and North Shore's failure to honor plaintiff's said right, because of its failure to inform Verizon of plaintiff's legal representation, resulted in Verizon placing the debt with RPM for collection without informing RPM that plaintiff was represented by counsel, thereby causing RPM to place its telephone calls to plaintiff and to send its collection letter directly to plaintiff at her home, further, thereby improperly encouraging plaintiff to contact Verizon's agent, RPM, directly about a debt for which she had the representation of legal counsel.

253.   Therefore, North Shore's failure to honor plaintiff's legal representation through its failure to inform Verizon of said legal representation and to have an agreement and procedure to prevent such failures were deceptive in a material way.

254.   Plaintiff is a reasonable consumer within the meaning of the NYGBL and acted reasonably under the circumstances of this case.

255.     Upon receipt of RPM's telephone calls and RPM's untimely collection letter, plaintiff felt surprised, confused, annoyed, upset and irritated, and a sense that defendants had set upon her and were harassing her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt.

256.     North Shore violated  NYGBL  §  349(a)  by improperly failing to inform Verizon that plaintiff was represented by counsel in the matter of the debt, and North Shore is liable to plaintiff under NYGBL § 349(h).

257.     As a result of the above violations, North Shore is liable to plaintiff for an injunction and damages in an amount to be determined at the time of trial, plus costs and reasonable attorneys' fees.

## AS AND FOR A NINTH CAUSE OF ACTION

### Negligence *per se*

258.     Plaintiff re-alleges paragraphs 1-257 as if fully re-stated herein.

259.     Under the NYGBL §  349(a), North Shore owed a recognized duty to plaintiff to effect collect of her alleged debt with reasonable care.

260.     Under the NYGBL §  349(a), North Shore had a recognized duty not to use deceptive acts and practices in the conduct of its business in the State of New York.

261.     As and for an alternative cause of action, North Shore breached each duty to plaintiff.

262.    North Shore breached each duty to plaintiff by disregarding her right to be represented by counsel, failing to inform Verizon that plaintiff was represented by Fagenson & Puglisi and thereby causing RPM to place its telephone calls to plaintiff and to send its collection letter directly to plaintiff at her home, in defendants' campaign to collect the debt from plaintiff.

263.    North Shore knew or should have known that the foreseeable consequence of North Shore's failure to inform Verizon of plaintiff's legal representation was that Verizon would place plaintiff's account with a different debt collector without informing said debt collector of plaintiff's legal representation.

264.    Owing to North Shore's failure to inform Verizon of plaintiff's legal representation, Verizon placed the account with RPM without informing RPM of such legal representation.

265.    North Shore thus caused RPM to communicate with plaintiff directly in breach of North Shore's duty to effect collection of the debt with reasonable care.

266.    In addition, by Exhibit 1 North Shore informed Fagenson & Puglisi that North Shore would send a copy of Fagenson & Puglisi's representation letter to Verizon, but North Shore failed to fulfill said undertaking.

267.    As a direct consequence of North Shore's said breach of duty to plaintiff, plaintiff suffered damage.

268.     As a direct consequence of North Shore's said breach of duty to plaintiff, plaintiff suffered damage in that upon receipt of RPM's telephone calls and RPM's untimely collection letter plaintiff felt surprised, confused, annoyed, upset and irritated, and a sense that defendants had set upon her and were harassing her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt, and RPM's contacts with her directly caused plaintiff to fear that Fagenson & Puglisi no longer represented her in the matter of the debt and caused plaintiff to seek further legal advice and representation.

WHEREFORE, plaintiff respectfully prays that judgment be entered against North Shore as follows:

(a)     awarding maximum statutory damages pursuant to 15 U.S.C. § 1692k;

(b)     awarding actual damages pursuant to 15 U.S.C. § 1692k in an amount to be determined at time of trial;

(c)     awarding reasonable attorneys' fees, costs and disbursements pursuant to 15 U.S.C. § 1692k;

(d)     enjoining North Shore from committing further deceptive acts and practices towards plaintiff, pursuant to NYGBL § 349;

(e)     awarding actual damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(f)     in the alternative to (e), awarding statutory damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(g)     awarding damages to plaintiff in the tort of negligence;

(h)     awarding reasonable attorneys' fees, costs and disbursements pursuant to NYGBL § 349(h); and

(i)     for such other and further relief as may be just and proper.

DEMAND FOR TRIAL BY JURY

Plaintiff requests trial by jury on all issues so triable.

**ALLEGATIONS AGAINST COLLECTO**

AS AND FOR A TENTH CAUSE OF ACTION

Improper failure to inform Verizon of Plaintiff's legal representation

15 U.S.C. §§ 1692e and 1692e(2)(A)

269.    Plaintiff re-alleges paragraphs 1-268 as if fully re-stated herein.

270.    By its letter dated July 19, 2016, Fagenson & Puglisi informed Collecto that plaintiff was represented by counsel.

271.    Collecto received Fagenson & Puglisi's aforesaid representation letter.

272.    By Exhibit 2, Collecto responded to Fagenson & Puglisi's representation letter.

273.    Collecto improperly sent Exhibit 2 directly to plaintiff at her home, instead of to Fagenson & Puglisi.

274.    Collecto knew that plaintiff was represented by Fagenson & Puglisi in the matter of the debt before RPM placed its telephone calls to plaintiff in May 2020 and before RPM sent its collection letter directly to plaintiff at her home in June 2020.

275.     Pursuant to 15 U.S.C. § 1692e(2)(A), Collecto had a duty to inform Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the debt.

276.     As and for an alternative cause of action, Collecto did not inform Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the debt.

277.     Collecto did not inform Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the debt before RPM placed its telephone calls to plaintiff in May 2020 and before RPM sent its collection letter directly to plaintiff at her home in June 2020.

278.     Collecto is therefore in violation of 15 U.S.C. § 1692e(2)(A), for its failure to inform Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the debt, thereby falsely representing the nature and character of the debt.

279.     Collecto is also in violation of 15 U.S.C. § 1692e in that its failure to inform Verizon that plaintiff was represented by Fagenson & Puglisi constitutes a false, deceptive and misleading means used by Collecto in connection with the collection of the debt, because such failure caused Verizon to authorize RPM to place its telephone calls to plaintiff and to send its collection letter directly to plaintiff at her home. thereby violating plaintiff's right to be represented by legal counsel.

AS AND FOR AN ELEVENTH CAUSE OF ACTION

NYGBL § 349

280.    Plaintiff re-alleges paragraphs 1-279 as if fully re-stated herein.

281.    Collecto owed a duty to plaintiff to effect its collection of plaintiff's alleged debt with reasonable care.

282.    As and for an alternative cause of action, Collecto breached its duty to collect plaintiff's debt with reasonable care.

283.    In the exercise of reasonable care, Collecto ought to have ensured that Collecto informed Verizon of any account for which Collecto received notice that an attorney represented the consumer.

284.    Fagenson & Puglisi's representation letter dated July 19, 2016 to Collecto notified Collecto of Fagenson & Puglisi's legal representation of plaintiff.

285.    Collecto received Fagenson & Puglisi's letter as evidenced by Collecto's response letter at Exhibit 2.

286.    However, Collecto did not inform Verizon that plaintiff was represented by Fagenson & Puglisi in the matter of the debt before RPM placed its telephone calls to plaintiff in May 2020 and before RPM sent its collection letter directly to plaintiff at her home in June 2020.

287.    The fact that RPM contacted plaintiff directly regarding the same debt for which Collecto had previously been notified that plaintiff had legal representation indicates a failure on the part of Collecto to comply with or to perform its duty to effect collection of the debt with reasonable care.

288.     Had Collecto duly informed Verizon of plaintiff's legal representation then Verizon should have so informed RPM and RPM would not have placed its telephone calls to plaintiff and sent its collection letter directly to plaintiff at her home.

289.     On information and belief, at all times material herein, Verizon referred dozens of consumer accounts of New York residents to Collecto for collection each month.

290.     Collecto's act of failing to inform Verizon that plaintiff was represented by Fagenson & Puglisi is a deceptive act and practice and caused RPM unlawfully to communicate directly with plaintiff.

291.     Said deceptive act and practice was committed by Collecto in the conduct of a business, trade or commerce or the furnishing of a service in the State of New York and constitutes a violation of NYGBL § 349.

292.     Collecto's deceptive act and practice was consumer–oriented, in that Collecto's act of failing to inform Verizon that plaintiff was represented by Fagenson & Puglisi, despite Collecto's knowledge of same, was not an act limited to plaintiff's account, but extended to the accounts of other consumers which Verizon placed with Collecto for collection and on which Collecto had been notified there was legal representation.

293.     At all times relevant herein, Collecto maintained no agreement or procedure with Verizon to ensure that Collecto duly informed Verizon of all Verizon accounts for which Collecto was notified that an attorney represented the consumers.

294.     Collecto's said conduct of failing to inform Verizon that consumers are represented by counsel has a broader impact on consumers at large whose accounts are referred by Verizon to Collecto for collection and who are represented by counsel in the matter of the collection of their Verizon debts.

295.     Collecto owes a duty to plaintiff and consumers at large to honor their right to legal representation and Collecto's failure to honor plaintiff's said right, because of its failure to inform Verizon of plaintiff's legal representation, resulted in Verizon placing the debt with RPM for collection without informing RPM that plaintiff was represented by counsel, thereby causing RPM to place its telephone calls to plaintiff and to send its collection letter directly to plaintiff at her home, further, thereby improperly encouraging plaintiff to contact Verizon's agent, RPM, directly about a debt for which she had the representation of legal counsel.

296.     Therefore, Collecto's failure to honor plaintiff's legal representation through its failure to inform Verizon of said legal representation and to have an agreement and procedure to prevent such failures were deceptive in a material way.

297.     Plaintiff is a reasonable consumer within the meaning of the NYGBL and acted reasonably under the circumstances of this case.

298.     Upon receipt of RPM's telephone calls and RPM's untimely collection letter, plaintiff felt surprised, confused, annoyed, upset and irritated, and a sense that defendants had set upon her and were harassing her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt.

299.     Collecto violated  NYGBL  §  349(a)  by improperly failing to inform Verizon that plaintiff was represented by counsel in the matter of the debt, and Collecto is liable to plaintiff under NYGBL § 349(h).

300.     As a result of the above violations, Collecto is liable to plaintiff for an injunction and damages in an amount to be determined at the time of trial, plus costs and reasonable attorneys' fees.

## AS AND FOR A TWELFTH CAUSE OF ACTION

### Negligence *per se*

301.     Plaintiff re-alleges paragraphs 1-300 as if fully re-stated herein.

302.     Under the NYGBL §  349(a), Collecto owed a recognized duty to plaintiff to effect collect of her alleged debt with reasonable care.

303.     Under the NYGBL §  349(a), Collecto had a recognized duty not to use deceptive acts and practices in the conduct of its business in the State of New York.

304.     As and for an alternative cause of action, Collecto breached each duty to plaintiff.

305.     Collecto breached each duty to plaintiff by disregarding her right to be represented by counsel, failing to inform Verizon that plaintiff was represented by Fagenson & Puglisi and thereby causing RPM to place its telephone calls to plaintiff and to send its collection letter directly to plaintiff at her home, in defendants' campaign to collect the debt from plaintiff.

306.     Collecto received Fagenson & Puglisi's representation letter dated July 19, 2016 and therefore knew of Fagenson & Puglisi representation of plaintiff.

307.    Collecto nevertheless failed to inform Verizon of plaintiff's legal representation.

308.    Collecto knew or should have known that the foreseeable consequence of Collecto's failure to inform Verizon of plaintiff's legal representation was that Verizon would place plaintiff's account with a different debt collector without informing said debt collector of plaintiff's legal representation.

309.    Owing to Collecto's failure to inform Verizon of plaintiff's legal representation, Verizon placed the account with RPM without informing RPM of such legal representation.

310.    Collecto thus caused RPM to communicate with plaintiff directly in breach of Collecto's duty to effect collection of the debt with reasonable care.

311.    As a direct consequence of Collecto's said breach of duty to plaintiff, plaintiff suffered damage.

312.    As a direct consequence of Collecto's said breach of duty to plaintiff, plaintiff suffered damage in that upon receipt of RPM's telephone calls and RPM's untimely collection letter plaintiff felt surprised, confused, annoyed, upset and irritated, and a sense that defendants had set upon her and were harassing her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt, and RPM's contacts with her directly caused plaintiff to fear that Fagenson & Puglisi no longer represented her in the matter of the debt and caused plaintiff to seek further legal advice and representation.

WHEREFORE, plaintiff respectfully prays that judgment be entered against Collecto as follows:

    (a)       awarding maximum statutory damages pursuant to 15 U.S.C. § 1692k;

    (b)       awarding actual damages pursuant to 15 U.S.C. § 1692k in an amount to be determined at time of trial;

    (c)       awarding reasonable attorneys' fees, costs and disbursements pursuant to 15 U.S.C. § 1692k;

    (d)       enjoining Collecto from committing further deceptive acts and practices towards plaintiff, pursuant to NYGBL § 349;

    (e)       awarding actual damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

    (f)       in the alternative to (e), awarding statutory damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

    (g)       awarding damages to plaintiff in the tort of negligence;

    (h)       awarding reasonable attorneys' fees, costs and disbursements pursuant to NYGBL § 349(h); and

    (i)       for such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff requests trial by jury on all issues so triable.

## EQUITABLE TOLLING AND FRAUD-BASED DISCOVERY RULE–
## NORTH SHORE AND COLLECTO

313.   Plaintiff re-alleges paragraphs 1-312 as if fully re-stated herein.

314.   North Shore's failure to inform Verizon that plaintiff is represented by Fagenson & Puglisi occurred within the one-year period immediately preceding the commencement of this action.

315.   Collecto's failure to inform Verizon that plaintiff is represented by Fagenson & Puglisi occurred within the one-year period immediately preceding the commencement of this action.

316.   In the alternative, even if North Shore's and Collecto's failure to inform Verizon that plaintiff is represented by Fagenson & Puglisi is determined to have occurred prior to the one-year period immediately preceding the commencement of this action, plaintiff's claims against North Shore and Collecto are timely brought pursuant to either the doctrine of equitable tolling or the fraud-based discovery rule or pursuant to both such doctrine and rule.

317.   The doctrine of equitable tolling applies to all of plaintiff's claims against North Shore and Collecto because, after her receipt of Exhibit 2 in August 2016, plaintiff received no communication concerning the Verizon account until May 2020 when RPM began calling her.

318.   Therefore plaintiff could not, even with reasonable diligence, have known that North Shore and Collecto had failed to inform Verizon that plaintiff is represented by Fagenson & Puglisi.

319.   Plaintiff could not have known of North Shore's and Collecto's said failures until May 2020 upon RPM's initiation of direct communication with her.

320.     Until May 2020, plaintiff had no reason to believe that North Shore and Collecto had failed to inform Verizon of plaintiff's legal representation.

321.     Plaintiff remained in ignorance of her potential claims against North Shore and Collecto until May 2020.

322.     The respective statutes of limitations for the running of plaintiff's claims against North Shore and Collecto were therefore equitably tolled until May 2020.

323.     Plaintiff having brought her claims in July 2020, plaintiff's claims are timely pursuant to the doctrine of equitable tolling.

324.     Further, plaintiff's claims against North Shore and Collecto are also timely pursuant to the fraud-based discovery rule.

325.     North Shore and Collecto fraudulently concealed from plaintiff the fact that they had not informed Verizon that plaintiff is represented by legal counsel.

326.     At no time did either North Shore or Collecto inform plaintiff or cause plaintiff to be informed that they had not informed Verizon that plaintiff is represented by legal counsel.

327.     In fact, North Shore affirmatively represented to plaintiff to the contrary, *viz.*, that it would forward a copy of Fagenson & Puglisi's representation letter to Verizon.

328.     It was not until May 2020 upon the initiation of RPM's direct communication with her that plaintiff became aware of her claims against North Shore and Collecto.

329.     The statutes of limitations for plaintiff's claims therefore began to run in May 2020 upon plaintiff's discovery of North Shore and Collecto's fraudulent concealment of their failure to inform Verizon of plaintiff's legal representation.

330.    Plaintiff having brought her claims in July 2020, plaintiff's claims are timely pursuant to the fraud-based discovery rule.

Dated:New York, New York
       July 5, 2020.

/s/ Novlette R. Kidd

NOVLETTE  R. KIDD, ESQ. (NK 9339)
FAGENSON & PUGLISI, PLLC
Attorneys for Plaintiff
450 Seventh Avenue, Suite 704
New York, New York 10123
Telephone: (212) 268-2128
Nkidd@fagensonpuglisi.com

# EXHIBIT 1

270 SPAGNOLI ROAD
SUITE 110
MELVILLE NY 11747

**NORTH SHORE AGENCY**
CUSTOMER SERVICE DEPARTMENT



0706169143 : ZRF
CONCETTA PUGLISI
ATTORNEY AT LAW 450 7TH AVE STE 704
NEW YORK NY  10123-0704

000077

Office Hours:
9AM - 4PM Monday - Friday ET

Calls to or from this company may
be monitored or recorded for
quality assurance.

Our Reference #: 0001408026

July 7, 2016

File #: 0706169143
Account #:  ▮▮▮▮50400001000
Re:  VERIZON

Dear Concetta Puglisi:

Thank you for contacting us on behalf of MAGALIS OTERO .

In light of the information provided, we have arranged to cease our collection efforts. We
will also forward a copy of your correspondence to our client.

Our files are updated on a regular basis.  An additional collection notice may have been
processed before the account was closed.

Please accept our sincere apologies for any inconvenience experienced.

Please note: We do not report to consumer reporting agencies (credit bureaus).

Sincerely,


Customer Service Department



Facsimile: (888) 870-4672



**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.**


The City of New York requires that we disclose the following for New York City Residents:
Contact Ryan Woods at North Shore Agency at 1-800-745-2935. This collection agency is
licensed by the Department of Consumer Affairs of the City of New York;
License # 1449866.

PAP-F0019-A.6

# EXHIBIT 2



EOS CCA
PO BOX 981002
BOSTON, MA 02298-1002

| ACCOUNT INFORMATION | |
| --- | --- |
| STATEMENT DATE | 08/05/16 |
| ACCOUNT # | 8-13713942 |
| CLIENT NAME | VERIZON |

Dear OTERO MAGALIS:

Our client, VERIZON, placed the above referenced account with our office on 07/02/16. The account has since been closed and returned to the client, and as such, our office will not contact you any further.

If you have any questions or concerns, please contact our Consumer Relations Department at 877-395-5997.

Sincerely,

Consumer Relations Department

New York City Dept of Consumer Affairs License #0960830. You may contact our office at the toll free number above during the hours noted and speak to David Weydt or any available representative.

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

For payments and general account inquiries, call 1-800-388-4704 or 1-972-392-0468.
For customer service issues, call our Consumer Relations Department at 1-877-395-5997.
Office Hours: Mon-Thur 8:00 AM - 9:00 PM EST, Fri 8:00AM - 5:00 PM EST, Sat 8:00AM - 12:00 PM EST

PO BOX 981002
BOSTON, MA 02298-1002

MAGALIS OTERO

NEW YORK NY 10029

1 of 1

127593-1918-2

# EXHIBIT 3

# RPM

*Receivables Performance Management LLC*

20818 44TH AVE W, SUITE 140
Lynnwood, WA 98036

💻 You can now pay online at: www.rpmpayments.com

| Account Information | |
| --- | --- |
| Date: | 05-28-20 |
| Reference Number: | 54835490 |
| Creditor: | Verizon |
| Creditor Account: | █████50400001 |
| Original Creditor: | Verizon |
| Amount: | ██████ |
| Verizon Collection Fee: | $0.00 |
| Total Due: | ██████ |
| Total Amount Due as of Charge-off: | ██████ |
| Interest: | N/A |
| Fees Accrued: | N/A |
| Payments Made: | N/A |

Dear Magalis Otero,

Your account, listed above, has been assigned to Receivables Performance Management for payment processing and collection.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such verification or judgment. If you so request in writing within 30 days of receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

In the event that your payment is by check, we may present your check electronically. In the ordinary course of business, your check will not be provided to you with your bank statement, but a copy can be retrieved by other means.

**This communication is from a debt collector. The purpose of this notice is to collect a debt. Any information obtained will be used for that purpose.**

## Pay Online!

💻 Secure, Convenient and Easy to Use.
You can now pay online at:
www.rpmpayments.com

☎ **Telephone Hours:**
Mon - Fri 7:30 AM to 5:00 PM Pacific time, Sat 7:00 AM to 12:00 PM Pacific time
Tel: 866.367.1870

✉ **Send Mail To:**
Verizon
PO Box 1548
Lynnwood, WA 98046-1548

---

VZW/355723398501 — — *Please tear off and return lower portion with payment in envelope provided.* — — — 85/000083/0002

Undeliverable Mail Only:
PO Box 2630
Southgate, MI 48195-4630

**IF PAYING BY CREDIT CARD, FILL OUT BELOW.**

VISA   MasterCard   DISCOVER Discover

CARD NUMBER

SIGNATURE    EXP. DATE

| REFERENCE NUMBER | PAY THIS AMOUNT | AMOUNT PAID |
| --- | --- | --- |
| ███50400001 | ████ | $ |

05-28-20

Please make payments to Verizon.

Otero, Magalis

██████████

New York, NY 10029█

Verizon
PO Box 1548
Lynnwood, WA 98046-1548

Also be advised: Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. section 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to:

(i)      the use or threat of violence;
(ii)     the use of obscene or profane language; and,
(iii)    repeated phone calls made with the intent to annoy, abuse, or harass.

If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:

1.    Supplemental security income, (SSI);
2.    Social security;
3.    Public assistance (welfare);
4.    Spousal support, maintenance (alimony) or child support;
5.    Unemployment benefits;
6.    Disability benefits;
7.    Workers' compensation benefits;
8.    Public or private pensions;
9.    Veterans' benefits;
10.   Federal student loans, federal student grants, and federal work study funds; and
11.   Ninety percent of your wages or salary earned in the last sixty days.

**New York City Borough Residents:**  Department of Consumer Affairs, City of New York, License # 1291891. Please contact Mariella Espinoza at 844-475-9113 if you have questions.